STEPHEN J. WINDHORST, Judge.
^Appellants, Martin and Julia Mar-ino (the “Marinos”), appeal the trial court’s judgment denying their motion for new trial and/or petition to annul for fraud or ill practice.[1] For the reasons which follow, we affirm.
Facts and Procedural History
On February 14, 2013, the Jefferson Parish Sheriffs Office (“JPSO”) arrested Salvadore Marino (“Salvadore”), the adult son of the Marinos, for drug-related crimes and failure to pay taxes, and executed a search warrant on Toker’s, a business owned and operated by Salvadore.[2] Later the same day, JPSO was contacted by a representative of Gulf Coast Bank and Trust Company (“Gulf Coast |4Bank”) and informed that there was a safe deposit box in the name of Toker’s. JPSO obtained a search warrant for a safe deposit box in the name of Toker’s, located at Gulf Coast Bank.[3] On February 18, 2013, JPSO executed the search warrant and seized $127,730.00 in U.S. currency from the safe deposit box. The safe deposit box was not in the name of Toker’s; rather, it was in the names of the Marinos and Sal-vadore.
On February 20, 2013, JPSO met with the Marinos and Salvadore at 348 Pellerin in Kenner, the Marino’s residence. JPSO served a Notice of Pending Forfeiture for the safe deposit box proceeds ($127,730.00) on the Marinos and Salvadore because the safe deposit box was in all three names. The Marinos signed the notice.and Salva-dore declined to sign the notice. On February 23, 2013, the Marinos filed an affidavit and verified claim for release of seized property.
On March 20, 2013, the State of Louisiana (“the State”) filed a petition for forfeiture in rem. The Marinos filed an answer on May 13, 2013. On December 23, 2013, the State filed an application for forfeiture pursuant to La. R.S. 40:2615 A[4] and a *374 motion to strike claim. The Marinos subsequently filed an amended answer and an opposition to the motion to strike. On March 20, 2014, the trial court granted the State’s motion to strike, finding that the Marinos failed to submit a timely, valid claim pursuant to R.S. 40:2610 B. The Marinos applied to this Court for supervisory review of the trial court’s March 20, 2014 judgment. This Court denied relief on May 22,2014.[5]
On- October 24, 2014, the State filed a supplement to the State’s application for forfeiture pursuant to R.S. 40:2615 A. The trial court granted the State’s | ^application and ordered forfeiture of the seized safe deposit box proceeds ($127,730.00). The Marinos were mailed a notice of signing of judgment on November 6, 2014. •
The Marinos filed a motion for new'trial and/or petition to annul'for fraud or ill practices on November 11, 2014, contending that the order of forfeiture 'was obtained by the State through fraud and ill practice. On January 14, 2015, the trial court denied the motion for new trial and/or petition to annul for fraud or ill practices. This appeal followed. Discussion
In their sole assignment of error, the Marinos contend that the trial court erred in denying their motion for new trial and/or. petition to annul for fraud .or ill practice, finding that.the State was not required to provide the Marinos with a notice/cópy of the proposed order prior to presentment to the trial court and finding that the forfeiture proceeding needed not be set for a contradictory hearing.
The Marinos contend that the order of forfeiture by the. State is contrary to the law because the State did not give the Marino’s any notice of its intent to file a request for forfeiture bn an ex parte basis, which they contend is not permissible. Therefore, the State’s lack of notice as required pursuant to La. R.S. 40:2615 A amounts to fraud sufficient to annul the order. La. R.S. 40:2615 requires that the trial court make certain factual determinations, and this may not be done by an ex parte motion or merely on the pleadings. The Marinos contend that the “secretive and one-sided request on the part of the State” was in direct violation of their right to be notified of the filing and to be heard at a contradictory hearing pursuant to La. C.C.P. art. 963,[6] La. C.C.P. art. 1313,[7] and La. R.S. 40:2615 A.
IfiThus, the issue before this Court is whether the trial court erred in granting an application for forfeiture pursuant to La. R.S. 40:2615 A, based solely on the State’s submissions, after the trial court held that the Marinos did not file a timely, valid claim pursuant to La. R.S. 40:2610 B.
Forfeiture proceedings pursuant to the Seizure dnd Controlled Dangerous Substances Property’ Forfeiture Act of 1989 (“the Act’.’), La. R.S.. 40:2601, et seq., are civil proceedings, generally governed by the Louisiana Code of Civil Procedure. La. R.S. 40:2611. K, Even though the issue of probable cause is ultimately a legal question, appellate courts apply the manifest error standard of review to a trial *375 court’s factual determinations made when considering whether probable cause for forfeiture exists. State v. $144,320.00 Tina Beers 132 Woody Lane, 12-466 (La.12/04/12), 105 So.3d 694, 701.
The Act establishes, specific procedures that allow the State to seize and forfeit property that is related to, is a proceed from, facilitates, or is itself a violation of the Uniform Controlled Dangerous Substances Law, La. R.S. 40:961-995. La. R.S. 40:2601, et seq.; State v. 2003 Infiniti G35, 09-1193 (La.01/20/10), 27 So.3d 824, 828. The Act provides the process- in which the State is able to forfeit property and it provides a means through which an innocent owner or interest holder can regain his property,, Id. Therefore, courts are. required to strictly, follow each of the Act’s-detailed requirements to the various stages in the process. Id.
After the State has followed the proper procedures to seize the property, the State must serve the owner of, or the interest holder in the seized property with a notice of pending forfeiture within forty-five days of the seizure to initiate a forfeiture proceeding. La. R.S. 40:2608(l)(a). If the owner’s or interest holder’s |7name and current address are known, the notice of pending forfeiture shall be by personal service or by mailing a copy of the notice by certified mail to that address. La. R.S. 40:2608(3)(a). The owner or interest holder in the property must take affirmative steps in order to preserve his interest in the property. The owner or interest holder must file either a claim or a request for stipulation, that “shall be mailed to the seizing agency and to the district attorney by certified mail, return receipt request.” La. R.S. 40:2610 A. This must be completed “within thirty days” after the owner or interest holder has received the notice of pending forfeiture and no extensions of time for the filing of the claim shall be granted. Id.
The Act provides for a specific form and content for a' elaim or a request for stipulation. The claim or request must be in affidavit form, signed by the claimant under oath and sworn to by the affiant before one who has authority to administer the oath, under penalty of perjury of false swearing. La. R.S. 40:2610 B. The claim or request for stipulation must also include specific averments. La. R.S. 40:2610 B(l)-(7), If the precise requirements for the filing of a timely, valid claim or request for stipulation are not met, there are significant consequences. 2003 Infiniti G35, 27 So.3d at'834.
The failure to fulfill any of these requirements — whether it be missing the deadline, filing a claim not in affidavit form, or not setting forth the necessary averments — precludes the owner or interest holder from further participation in the forfeiture proceeding. As the Act makes plain, when “no request for stipulation or claim is filed timely, the district attorney shall proceed as provided in Sections 2615 and 2616.” See La. R.S. 40:2609. La. R.S. 40:2615 A provides in pertinent part: “If no claims are timely filed in an action in rem, the district attorney may apply for an order of forfeiture - and allocation of forfeited property pursuant to Section 2616 of this Chapter. Upon a determination by the court that the district attorney’s written application established the court’s jurisdiction, the giving of proper notice, and facts sufficient to show probable cause for forfeiture, the court shail order the property forfeited to the state.” id. (Emphasis added.)
| sIn this matter, the State properly complied with the requirements set forth in the Act to seize the property and initiate forfeiture proceedings and provided the *376 Marinos and Salvadore a notice of pending forfeiture for the safe deposit box proceeds. Upon receiving and signing the notice of pending forfeiture on February 20, 2013, the Marinos attempted to comply with the requirements of La. R.S. 40:2609 and La. R.S. 40:2610. Pursuant to the notice of pending forfeiture, the Marinos had the option of requesting a stipulation or filing a claim, and they chose the latter. The Marinos properly mailed the claim, by certified mail with return receipt requested to JPSO Narcotics Division and the Jefferson Parish District Attorney within the thirty days of service of the notice of pending forfeiture on February 23, 2013. The claim was in affidavit form, signed by the Marinos under oath and sworn to before their attorney, James A, Williams. However, the claim did not contain the mandatory averments, with the requisite specificity, to qualify as a valid claim under La. R.S. 40:2610 B(l)-(7).
The trial court found that the Marinos claim did not comply with La. R.S. 40:2610 B. The Marinos made general assertions in the claim that the safe deposit box proceeds were acquired through lawful means and the name of the transferor or the date the property was acquired were not specified. The trial court held that because the Marinos made conclusory general assertions and failed to provide the specific factual and legal assertions required by La, R.S. 40:2610 B, their claim was invalid.[8] The Marinos failure to provide the specific factual and legal aver-ments required rendered their claim invalid under La. R.S. 40:2610 B, and therefore, the trial court granted the State’s motion to strike claim.
laThe Marinos filed for supervisory review of the trial court’s judgment granting the State’s motion to strike claim. This Court declined to exercise its supervisory jurisdiction, but also stated that the Mari-nos retained an adequate remedy on appeal. The Marinos did not seek review from the Louisiana Supreme Court. Moreover, in this appeal, the.Marinos do not assign as error or seek review of the trial court’s judgment which struck the Marinos claim. Accordingly, the trial court’s judgment on the motion to strike is now final and is not subject to our review in this appeal.
Since the Marinos did not file a valid, timely claim within thirty days pursuant to La. R.S. 40:2609-2610, they were precluded from further participation in the forfeiture proceeding. La. R.S. 40:2609 C provides that if a request for stipulation or claim is not timely filed, “the district attorney shall proceed as provided in Sections 2615 and 2616[9] of this Chapter.” La. R.S. 40:2615 A provides that “If no claims are timely filed in an action in rem, the district attorney may apply for an order of forfeiture.”
The State filed an application for forfeiture pursuant to La. R.S. 40:2615 A simultaneously with its motion to strike. In its application, the State contended that since the Marinos did not file a valid, timely claim as argued in their motion to strike, the State was entitled to apply for forfeiture based solely on the submissions of the State pursuant to La. R.S. 40:2615 A and *377 2003 Infiniti G35, supra. Seven months after the trial court granted the State’s motion to strike claim, the State filed a supplemental application for forfeiture pursuant to La. R.S. 40:2615 A, wherein it contended that since no valid timely claim had been filed, it was entitled to forfeiture based solely on the State’s submissions previously filed in its | ^application pursuant to La. R.S. 40:2615 A and on the new exhibits attached to the supplemental application. We find that the State correctly followed La. R.S. 40:2609 C and La. R.S. 40:2615 A when it filed the application and supplemental application for forfeiture pursuant to La. R.S. 40:2615 A and accompanying exhibits.
La. R.S. 40:2615 A also sets forth the proper method for the trial court to reach a determination on whether a forfeiture should be granted, and it provides in part, “Upon a determination by the court that the district attorney’s written application establishes the court’s jurisdiction, the giving of proper notice, and facts sufficient to show probable cause for forfeiture, the court shall order the property forfeited to the state.” (Emphasis added.) In interpreting this provision, the Louisiana Supreme Court held that “if, based on the submissions by the state, the district court was satisfied that the court had proper jurisdiction, that the State’s Notice of Pending Forfeiture gave the proper notice, and that the facts asserted were sufficient to support a forfeiture under a probable cause standard, the Act mandates that the district court enter a forfeiture judgment.” 2003 Infiniti G35, 27 So.3d at 837. (Emphasis added.) Accordingly, we find no merit to the Marinos arguments that the State was required to give notice and to set the forfeiture for a contradictory hearing. Since there was no valid, timely claim filed, nor any unadjudicated claim pending, the State was allowed to bring the forfeiture proceeding through written application for the trial court to determine “based on the submissions by the state” whether the trial court had jurisdiction, whether the State’s notice of pending forfeiture gave the proper notice, and whether the facts asserted were sufficient to show probable cause for forfeiture.
Having found no procedural error, we consider whether the submissions by the State satisfied the requirements of La. R.S. 40:2615 A.
In Jurisdiction:
La. R.S. 40:2602 B provides that jurisdiction and venue “may be brought in the judicial district in which any part of the property is found or in the judicial district in which an owner or interest holder could be petitioned against civilly or criminally for the conduct alleged to give rise to the forfeiture.” Based on the State’s exhibits, the conduct alleged to give rise to the forfeiture occurred in Jefferson Parish, Louisiana, which is the Twenty-Fourth Judicial District Court, and thus, the trial court had proper jurisdiction.

Notice:

La. R.S. 40:2608(1)(a) and (4) provide that notice of pending forfeiture must be provided to the owner and interest holder within forty-five days after seizure, and the notice must contain the required specifications. The Marinos were personally served with and signed for the notice of pending forfeiture on February 20, 2013, well within the required time period as the seizure of the safe deposit box proceeds occurred on February 18, 2013. The notice described the seized assets (U.S. Currency $127,730.00, denomination and number of bills, safe deposit box *****), date of the seizure (02/18/13), place of seizure (1825 Veterans Blvd., Metairie, LA 70003), the conduct giving rise to forfeiture (summary of investigation into Token’s *378 selling synthetic marijuana, the arrest of Salvadore Marino and his statement that he was selling illegal substances, execution of search warrant at Toker’s, and execution of search warrant on safe deposit box * * ⅜ * • * ■ in the name of Toker’s from which $127,730.00 in U.S. Currency was seized)[10], and a | ^summary of procedures and procedural rights applicable to the forfeiture action (reproduced text of La. R.S. 40:2610 verbatim and stated how a claimant may proceed). JPSO received documents showing that the safe deposit box was not in the name of Toker’s, but that it was in the name of the Marinos and Salvadore, and therefore, properly served the Marinos with the notice of pending forfeiture. In response to the notice of pending forfeiture, the Marinos attempted to file a valid, timely claim. Based on the submissions from the State, the Marinos received proper notice.

Probable Came:

Probable cause is a standard of proof which is less than preponderance, but more than suspicion. See State v. Albritton, 610 So.2d 209, 213 (La.App. 3 Cir.1992). Probable cause for forfeiture is satisfied when the totality of the facts and circumstances provides reasonable ground for believing the property in question is connected to illegal drug trafficking. State v. $1U,320.00, Ü2-046 (La.12/04/12), 105 So.3d 694, 704. '
The evidence- submitted in support of the State’s burden to show probable cause establishes more than suspicion. The evidence shows that Salvadore operated a business, Toker’s, which was involved in selling illegal substances and receiving a large amount of cash. The evidence documents the initial investigation and subsequent actions of JPSO in investigating the illegal operation taking place at Toker!s, including the arrest of Salvadore and the searches and seizures at |1sToker’s and Salvadore’s residence. JPSO was notified that there was a safe deposit box in Toker’s name at Gulf Coast Bank. A large amount, of cash was found in the safe deposit box registered to Salvadore and the Marinos. No explanation has been offered as to the source of the money. On the day of Salvadore’s arrest, execution of the search warrant at Toker’s, and the consent to search Salvador’s residence, but *379 before Salvadore’s recorded statement to JPSO, video surveillance from the bank showed that Martin Marino deposited a large amount of U.S. Currency in the safe deposit box.
Martin testified in his deposition[11] that his daughter-in-law called him in the evening on the day of Salvadore’s arrest and he stated he “never left the’ house” that evening. When he was later shown the video surveillance tape from the bank, Martin admitted that he went the bank on the date of Salvadore’s arrest. He testified that the money “was up in my attic” and it had been there a long time. He said that his daughter-in-law called him- and told him that the police “raided” his son’s store and took all of his money, the police were at her house, and she told him that “if you’ve got anything, you'better take — take it to the bank or something.” Martin took the money to the bank and put it in the safe deposit box because he “wasn’t going to leave it in there for them to come and search my house.”
The evidence shows that Martin had not accessed the safe deposit box for more than a year before he deposited a large sum of money in the safe deposit box on the day his son, Salvadore, was arrested. The access records for the safe deposit box show the Marinos and Salvadore always signed the access records when they went to the safe deposit box, with the exception of the day of Salvadore’s arrest. | ^Martin did not sign the access records, which indicated that Martin did hot want anyone to know that he accessed the safe deposit box. The Marinos claimed that the money in the safe deposit box is their life savings, but they offered no explanation as to the source of the funds.
Based on the facts-and evidence submitted by the State, 'we find that the State demonstrated by credible evidence that the money was probably drug-reiated. The State satisfied its burden of establishing probable cause for the forfeiture of the safe deposit box proceeds, and the trial court was not manifestly erroneous in granting the order of forfeiture for the safe deposit box proceeds in the amount of $127,730.00;
Conclusion
For the above stated reasons, the judgment ordering the forfeiture of One Hundred Twenty-Seven Thousand Seven Hundred Thirty Dollars ($127,730.00) and the allocation of said funds, is affirmed. All costs of this appeal are assessed to appellants, Martin and Julia Marino.
AFFIRMED

.In their sole assignment of error, the Mari-nos contend that the trial court erred in denying their motion for new trial. The motion was in fact a motion for new trial and/or petition to annul for fraud or ill practices. The judgment denied the motion and/or petition. The motion for new trial and/or petition to annul both involve the same issues. A denial of a motion for new trial is an interlocutory judgment which is not appealable. Lozier v. Estate of Elmer, 10-754 (La.App. 5 Cir. 02/15/11), 64 So.3d 237, 239, writ denied, 11-529 (La.04/25/11), 62 So.3d 93. However, when the motion for appeal refers to a specific judgment denying a motion for new trial and the appellant exhibits a clear intention to appeal the judgment on the merits, then the appeal should be considered. Id. Although the Marinos contend they are appealing the trial court’s judgment denying their motion, it is clear from the appellate brief that the Mari-nos are contesting the judgment on the merits, i.e., the order granting forfeiture. Accordingly, we will maintain the appeal and address the merits of the Marinos’ appeal,

. The record is unclear as to whether Salva-dore Marino is an owner of the business. Martin Marino testified at his deposition that Salvadore and his wife, Julia Martin, were the owners of Toker’s, but Salvadore handled the daily operations of the business. In a statement to JPSO after his arrest, Salvadore Mar-ino stated that his mom, Julia Marino, owned the business, but he handled the daily operations of Toker’s.

. The application for the search warrant stated that the safe deposit box was in the name of "Toker’s, Salvadore Marino,” whereas the search warrant only states "Toker’s.”

. R.S. 40:2615 A is applicable when no valid claim is timely filed.

. Julia Marino wife of/and Martin Marino v. State of Louisiana, 14-285 (La.App. 5 Cir. 5/22/14) (unpublished denial of supervisory writ).

. C.C.P. art, 963 provides in part that "If the order applied for by written motion is one to which the mover is not clearly entitled, or which requires supporting proof, the motion shall be served on and tried contradictorily with the adverse party,”

.C.C.P. art. 1313 provides for the proper service of pleadings subsequent to the petition. ■

. La. R.S. 40:2610 B(4) provides that a claimant must state the "date, identity of the trans-feror, and the circumstances of the claimant’s acquisition of the interest in the property.” La. R.S. 40:2610 B(5) required the Marinos to state the "specific provision” of the Act "relied on in asserting that the propérty is not subject to forfeiture.” La. R.S. 40:2610 B(6) provides that a claimant must state "all essential facts supporting each assertion.”

. La. R.S. 40:2616 provides for the allocation of forfeited property, creation of special funds, and reporting and is not at issue in this appeal.

. Verbatim summary of , conduct giving rise to forfeiture as provided in notice of pending forfeiture:
Packs of synthetic cannabinoids, specifically, Mad Hatter, were purchased from Tok-ers, 2408. David Drive, on more than one occasion. The clerk, a white male, did not ring the purchase up on the cash' register. The U.S. currency was not placed in the cash register, but placed underneath the cash register, possibly on a shelf. The purchased packages of Mad Hatter were tested, which indicated a positive result for UR-144, which is an illegal substance under R.S. 40:966. .
Agents from JPSO Narcotics executed a search and seizure warrant at the business of Tokers, 2408 David Drive. Agents seized over 300 packs of Mad Hatter in different flavors along with other brands of synthetic cannabinoids (OMG, Bomb Marley, Scooby Snax). Agents located loose U.S. Currency in a brown paper bag on. a shelf ($316.00), which was directly underneath the cash register. Agents located loose U.S. currency in a brown paper bag on the floor ($4,900.00). Agents also located U.C, Currency in the cash register ($1,272.00). The clerk was identified as Salvadore Marino (2-22-72). Salvadore Marino was Miran-dized and signed-a JPSO-Rights of Arrestee or Suspect Form, waiving his rights, Sal-vadore Marino admitted to selling synthetic cannabinoids from his store, not ringing up the purchases on the cash register, and placing the money underneath the cash register. Agents also executed a search and seizure warrant on a Safe Deposit Box # * * * * *, from Gulf Coast Bank & Trusf in the name of Toker’s. A total of $127,730.00 in U.S. currency was 'seized.

. Martin Marinos deposition was taken in the lawsuit wherein the Marinos filed against the bank for damages for contacting JPSO about the safe deposit box that is in question in this case, Julia Marino, wife of/and Martin Marino v. Gulf Coast Bank and Trust Company and John Doe, case no. 735-480, Division L, Twenty-fourth Judicial District Court.